RAY L. REED v. R. A. TROVATTEN AND ANOTHER.[1]

February 7, 1941.

No. 32,474.

[1]Reported in 296 N. W. 535.

*Dwight N. Johnson* and *R. F. Merriam,* for appellant (relator below).

*J. A. A. Burnquist,* Attorney General, *P. F. Sherman,* Assistant Attorney General, and *Faner C. Wonderly,* Special Assistant Attorney General, for respondents.

PETERSON, JUSTICE.

Relator sought a writ of *mandamus* to compel the respondents Trovatten as commissioner of agriculture and Anderson as chief oil inspector to reinstate and restore him to the position of deputy oil inspector which he formerly held. An alternative writ was issued, which, after hearing, was quashed. After decision quashing the alternative writ, relator made a motion to have G. Howard Spaeth, the state tax commissioner, made a party respondent, which was denied. Relator appeals from the judgment quashing the writ and the order denying his motion to have Spaeth made a party.

Relator was appointed a deputy oil inspector in August, 1927, after having passed a competitive examination as to his qualifications as required by 1 Mason Minn. St. 1927, §§ 3861-3864. On April 1, 1939, respondents sent relator a letter which he received on the 2nd notifying him that his employment was terminated and granting him two weeks' vacation from that date with pay. Relator alleges that another inspector was appointed to take his place.

On April 10, 1939, the petition was filed and the alternative writ of *mandamus* was issued. Relator claimed that the so-called

discharge or termination of his tenure as deputy oil inspector was void and of no effect. This claim is bottomed on § 3861, which provides that no inspector shall be discharged except upon written charges and after hearing before the board of examiners within 15 days, and that "the failure to make and file such statement within five [5] days after such removal shall operate to reinstate such official or employe. No removal of any inspector shall be made except for neglect of duty, incompetence, insubordination or immorality."

The return day was April 22. The respondents made a return in which they admitted that they had removed relator without filing written charges and without a hearing and alleged that the removal was lawful without such written charges and hearing.

The matter came on for hearing on October 2, 1939, and was submitted on the alternative writ and return.

Many points are raised, but we deem it necessary to decide only one, which would be decisive against relator if all the others were decided in his favor. That question is whether or not relator had a civil service status such as he claimed.

There has been much argument on this point whether or not relator had such a civil service status. Relator relies on 1 Mason Minn. St. 1927, §§ 3861-3864 (L. 1921, c. 495, §§ 74-77), as amended by 3 Mason Minn. St. 1938 Supp. § 3862. These sections provide for civil service in the appointment and removal of inspectors under the dairy and food commission and are made applicable to deputy oil inspectors by 1 Mason Minn. St. 1927, § 3773-1.

Respondents contend that whatever civil service status relator had was abolished by the reorganization act of 1925, which limited civil service under §§ 3861-3864 to appointment only and not removal, 1 Mason Minn. St. 1927, § 53-38 (L. 1925, c. 426, art. XII, § 2), and which expressly provided that "the term of office or employment of all state employes shall be at the pleasure of the appointing officer," 1 Mason Minn. St. 1927, § 53-48 (L. 1925, c. 426, art. XX, § 1). Respondents rely on our decision in State ex rel. Kinler v. Rines, 185 Minn. 49, 239 N. W. 670, as holding

that all appointments were made terminable at the pleasure of the appointing officer by the 1925 law. Relator makes the further contention that 3 Mason Minn. St. 1938 Supp. § 3862 (L. 1929, c. 164), reënacted the civil service provisions of 1 Mason Minn. St. 1927, §§ 3861-3864, by reference.

On April 22, 1939, which was after the alternative writ was issued, the reorganization act of 1939, L. 1939, c. 431, and the state civil service act, L. 1939, c. 441, were enacted. Respondents relied heavily on c. 431, art. VI, § 4, which abolished the office of chief oil inspector and transferred his duties to the commissioner of taxation, an office created by the act. Their contention in this respect was that since they no longer had any of the powers of the office at the time the writ was heard they could not be compelled to perform any of its duties.

We shall assume without so deciding that relator had civil service rights under 1 Mason Minn. St. 1927, §§ 3861-3864, as amended by 3 Mason Minn. St. 1938 Supp. § 3862, at the time of his removal and that such rights continued in force until April 22, 1939, the effective day of the reorganization and state civil service acts. As a necessary consequence, we must assume also that relator was entitled to be reinstated during that period.

Section 9 of the civil service act divides state positions into the classified and unclassified service. The unclassified service includes a long list of positions enumerated in subd. (1) (a-p). The office of deputy oil inspector is not one of them. All other positions are included in the classified service by subd. (2). Hence the office of deputy oil inspector came under the classified service.

Section 10 provides that all persons who have held offices or employments in the classified service for five years or more shall automatically receive a civil service status without examination, but shall be subject to probationary appointment for six months and subject to dismissal at any time within such probationary period. Any civil service status enjoyed by employes under prior law or regulation was abolished by § 10(3), which reads as follows:

"(3)   Except as in this act otherwise specifically provided, until August 1, 1939, all persons holding offices or employments in the classified service, may be laid off, suspended, transferred, discharged, promoted, reduced, or discharged and reinstated as temporary employees, at the will and pleasure of the authority employing them, subject, however, to such laws as are not expressly repealed by this act.

"Except as in this act otherwise specifically provided, no person holding office or employment in the classified service by reason of any merit examination heretofore held pursuant to any law of this state or the regulations or order of any department thereof, shall be deemed to have acquired a civil service status by reason thereof."

Section 43 expressly repeals 1 Mason Minn. St. 1927, §§ 3861, 3863, 3864, and 3 Mason Minn. St. 1938 Supp. § 3862, under which relator claims his civil service status.

The effect of the civil service act of 1939 was to establish a new and complete system of civil service for all positions in the classified service. It abolished civil service rights enjoyed by state officers and employes under statutes and regulations adopted prior to the time it became effective. A public officer or employe appointed pursuant to statutory authority does not have a vested right to continuance in his position. The legislature may abolish and modify any civil service or preference right which it has granted as well as the remedies for enforcement of the same. State ex rel. Kane v. Stassen, 208 Minn. 523, 294 N. W. 647. Hence, the legislature had the power to abolish relator's civil service status which he claims under prior laws. This was done not only by the provisions of the civil service law declaring that no person shall be deemed to have acquired a civil service status by reason of any merit examination under any prior law or regulation, but also by the express repeal of the statutes under which relator claims his civil service status.

The right to a writ of *mandamus* is determined as of the time of the hearing rather than of the application. Dexner v. Houghton, 153 Minn. 284, 190 N. W. 179. At the time of hearing relator

did not have a right to the position which he claimed. Where the relator does not have the right which he claims should be enforced by *mandamus,* it is axiomatic that a writ should not issue. See State ex rel. Goar v. Hoffmann, 209 Minn. 308, 296 N. W. 24. Of course we do not overlook the fact that the civil service act did not become effective until April 22, 1939, which was three weeks after relator was discharged and seven or eight days after he was removed from the state pay roll. If relator had a civil service status under prior law, his removal was unlawful and wrongful. Gude v. City of Duluth, 144 Minn. 109, 174 N. W. 614. See State ex rel. Brandt v. Thompson, 91 Minn. 279, 97 N. W. 887. From the time relator lost his civil service rights, if any, on the effective date of the state civil service act to the time of trial, the respondents excluded him from his office and filled it by the appointment of another. The continuing exclusion of relator from the office of deputy oil inspector under the claim by respondents that they had legally removed him during a time when they had a right to discharge him operated to remove him as of that time. See 46 C. J. p. 993, § 168.

Our conclusion is that relator was lawfully removed from office as of the effective date of the new civil service act, if he was not removed sooner than that, and that such removal was in effect when the alternative writ came on for hearing. Hence a peremptory writ was properly denied as was the subsequent motion to make the commissioner of taxation a party to the *mandamus* proceedings.

Affirmed.