## STATE EX REL. CITY OF ST. PAUL AND ANOTHER v. HARRY W. OEHLER.[1]

No. 33,934.

September 25, 1944.

[1]Reported in 15 N. W. (2d) 783.

288

*Bruce J. Broady* and *Ira Karon,* for relators.
*Harry W. Oehler* and *Francis M. Smith,* for respondent.

STREISSGUTH, JUSTICE.

With the consent of the attorney general, relators filed an information for a writ of *quo warranto* to test the right of respondent to the office of corporation counsel for the city of St. Paul. The writ having been issued by leave of this court, respondent served and filed his answer thereto, together with a notice of motion to vacate the order issuing the writ and to quash the information, the writ, and all proceedings thereunder. The notice of motion was supported by a lengthy affidavit purporting to recite the factual history of a controversy between him and relators culminating in a resolution of the city council dated August 18, 1944, removing him from office. By reference, the allegations of respondent's answer and a transcript of proceedings had before the city council after the passage of the removal resolution were incorporated into the affidavit. Upon the filing of the notice of motion, answer, and accompanying affidavit, this court issued an order, dated September 13, 1944, requiring relators to show cause why the relief specified in the notice of motion should not be granted. The order provided *inter alia* "that Relators may demur or shall reply in detail to the Answer of Respondent, and that Relators shall serve and file such demurrer or Reply before the return hour hereof; and that Relators shall serve and file an answering affidavit to Respondent's affidavit, therein answering in detail respondent's affidavit and the factual statements therein, and also in the other documents, records, and transcripts therein referred to."

No reply or demurrer to the answer nor counteraffidavits have been filed by relators as directed. They challenge the regularity of

the procedure adopted and object to the disposition of any issues of fact on affidavits.

While *quo warranto* is an extraordinary writ, yet, absent statutory directions to the contrary, ordinary rules of civil pleading should be applied to proceedings wherein the writ is invoked. 51 C. J., Quo Warranto, § 54. Our statute authorizes this court to issue such writs and provides "for the hearing and determination of all matters involved therein * * * subject to such regulations as it may prescribe." Minn. St. 1941, § 480.04 (Mason St. 1927, § 132). Under this statute, it may reasonably be argued that the court has the power, if it chooses to exercise it, to hear and determine issues of fact in *quo warranto* proceedings upon affidavits, without a reference. But such procedure would be contrary to that generally adopted by the courts of this country (see High, Extraordinary Legal Remedies [2 ed.] § 606; State v. Brown, 5 R. I. 1), and should not be resorted to over the objection of one of the parties where both the law and the facts are involved and in dispute. An examination of the answer and supporting affidavit now satisfies us that the issues tendered are not such as should be determined upon affidavits, and that, notwithstanding seeming advantages of a speedy determination of the issues, these are more than counterbalanced by the importance of presenting the disputed issues in the usual manner rather than upon conflicting affidavits.

Where leave to file an information for a writ of *quo warranto* is granted *ex parte,* this court may vacate and set aside its order if it appears that the leave was granted inadvertently, improvidently, or under a misapprehension of facts. State ex rel. Young v. Village of Kent, 96 Minn. 255, 258, 104 N. W. 948, 1 L.R.A.(N.S.) 826, 6 Ann. Cas. 905. The information and subsequent proceedings should not, however, be set aside upon a motion supported by affidavits which merely amount to a denial of the allegations of the petition. The proper practice in such a case is to deny the motion and to require the respondent to plead to the information as he sees fit. People ex rel. Kinahan v. Blair, 339 Ill. 57, 170 N. E. 680. The affidavits presented here are not sufficient to show that leave

was improvidently granted, but merely emphasize the fact that there is a dispute between the parties not only as to the proper construction of the provisions of the St. Paul charter relating to dismissal and removal of corporate officers, but also as to the facts leading up to the removal of respondent.

These considerations impel us to rescind that portion of the order of September 13 requiring the filing of counteraffidavits and to deny the motion of respondent. Our denial of the motion is not to be construed as an expression of opinion upon the right of the city council under the St. Paul charter to remove respondent from office without formal charges and a hearing thereon, nor upon the validity of other defenses alleged in the answer. Any questions of law which are involved in the proceedings can be determined upon a demurrer to the answer, or, in case a reply and not a demurrer is interposed, upon a motion based upon the pleadings. Should the right or want of right to remove respondent without a hearing appear from the pleadings as a matter of law, no reference will be necessary, and the delay incident to a reference will be avoided.

Motion denied.

(STATE EX REL. CITY OF ST. PAUL AND ANOTHER v. HARRY W. OEHLER.[3])

Upon Relators' Demurrer to the Answer.

On November 28, 1944, the following opinion was filed:

[3]Reported in 16 N. W. (2d) 765.

Julius J. Olson, Justice.

This is an original *quo warranto* proceeding brought by the state upon the relation of the city of St. Paul and Bruce J. Broady to test the right of Harry W. Oehler to retain the office of corporation counsel of the city. On September 25, 1944, in State ex rel. City

of St. Paul v. Oehler, 218 Minn. 287, 289, 15 N. W. (2d) 783, 784, wherein we denied respondent's motion to vacate the order issuing the writ and to quash the proceedings, we said, in arriving at that conclusion:

"* * * The affidavits presented here are not sufficient to show that leave [to file the information for the writ] was improvidently granted, but merely emphasize the fact that there is a dispute between the parties not only as to the proper construction of the provisions of the St..Paul charter relating to dismissal and removal of corporate officers, but also as to the facts leading up to the removal of respondent."

And further (218 Minn. at p. 290, 15 N. W. [2d] at p. 785):

"* * * Our denial of the motion is not to be construed as an expression of opinion upon the right of the city council under the St. Paul charter to remove respondent from office without formal charges and a hearing thereon, nor upon the validity of other defenses alleged in the answer. Any questions of law which are involved in the proceedings can be determined upon a demurrer to the answer, or, in case a reply and not a demurrer is interposed, upon a motion based upon the pleadings. Should the right or want of right to remove respondent without a hearing appear from the pleadings as a matter of law, no reference will be necessary, and the delay incident to a reference will be avoided."

Upon the filing of that decision, relators interposed a general demurrer to respondent's answer. The case is now here on questions of law alone.

The determinative facts may be thus summarized: St. Paul is a city of the first class and operates under a home-rule charter. Certain sections thereof, deemed helpful to decision here, will be referred to by section numbers.

St. Paul's municipal elections are held biennially (§ 4) "At each general municipal election there shall be elected a mayor, a comptroller, and six councilmen, and the term of office of each of such officers shall be two years * * *, and until their respective suc-

cessors shall have been elected and qualified" (§ 5). The mayor must be a qualified elector of the city. He is required to "take care that the ordinances of said city and the laws of the State of Minnesota are duly observed and enforced and that all other executive and administrative officers of the city discharge their respective duties" (§ 54). He is also required to "preside at the meetings of the council and shall vote on all business before that body, just as shall councilmen, provided that when the question before the council is sustaining the mayor's veto, or passing any ordinance or resolution notwithstanding the mayor's veto, or upon the removal from office of any persons on charges preferred by the mayor, then the mayor shall have no vote thereon" (§ 55). When, in the judgment of the mayor, "any councilman, *as councilman, or as the head of any administrative department,* has not conducted the business of the city honestly, faithfully and with reasonable skill, it shall be the duty of the mayor to file with the city clerk charges against said officer, and on the filing of said charges with reasonable specifications as to the concrete instances of dishonesty, unfaithfulness or incompetency charged, it shall be the duty of the council to try publicly the truth or falsity of such charges, and if they be found true and of sufficient gravity to indicate dishonesty, unfaithfulness or incompetency on the part of the accused, the council shall remove said accused from office" (§ 59). (Italics supplied.)

"The legislative authority of the City of St. Paul shall be vested in the council, which shall be composed of the six councilmen and the mayor, who ex-officio shall be the presiding officer or president thereof" (§ 110). The general powers of the council are set forth in § 126, and § 127 grants certain specific powers in addition to the general powers conferred by § 126. Generally, these are broad and comprehensive, and we entertain no doubt that ample jurisdiction is delegated by the charter to the council to act with finality upon issues such as are here presented.

Under the provisions of § 176, the corporation counsel "shall be elected by the council"; his term of office "shall be for two years and until his successor shall be elected and qualified." Section 177

provides that he "may appoint such assistants as the council, by an administrative ordinance shall provide and at such compensation as it shall fix, and for acts of such assistants he shall be responsible, and each of them shall hold office during the pleasure of corporation counsel and shall perform such duties as the corporation counsel shall designate. It shall be the duty of the corporation counsel and his assistants to give their whole time and attention to the discharge of their official duties." Under § 178, he is required to "attend to all the legal business of the city." He is the legal "advisor of the mayor, the council, and all city officers, and when requested by any thereof shall furnish opinions upon such legal questions of the business of the city as may be submitted to him. He shall also render and perform such other legal duties as may be prescribed by the council. All officers of said city are prohibited from retaining, feeing or employing any other attorney; * * *."

The important and controlling section involved in this litigation is 28, which reads:

"Every person appointed to any office by the mayor, or by the council or elected to office by the people, may be removed from such office by the council by a five-sevenths affirmative vote of all the members elected. But no officer elected by the people shall be removed except for cause nor until such person shall have had a reasonable opportunity to be heard in his defense. * * * In such cases, the council shall act by written resolution only, and said resolution shall contain a summary of the charges against said officer and the reasons for his removal."

On August 18, 1944, the city council met in public session. At that time the following resolution was introduced by Councilman Rosen:

"Resolved, upon request of the Mayor, that Harry W. Oehler be and hereby is removed as Corporation Counsel."

Upon roll call, five of the councilmen voted yea to adopt the resolution, one councilman voted nay, and the mayor did not vote. On August 25, the council elected Bruce J. Broady, one of the re-

lators here, as corporation counsel to take respondent's place. The latter, however, refused to surrender the office, and these proceedings naturally followed.

Respondent has raised many alleged grounds upon which he founds his claim of right to retain the office of St. Paul's corporation counsel. In substance, however, we think his position may be summarized in this fashion: He was "elected" by the council immediately after the 1940 city election, and was so reëlected in 1942 and 1944, in each instance for a two-year term. It is by virtue of these elections that he now contends he may be removed only for "malfeasance or nonfeasance in the performance of his duties"; and then only "after due notice and a fair hearing."

Relators, on the other hand, contend that the quoted charter provision has the force and effect of a legislative enactment; that it was within the competence of the people of St. Paul so to legislate; that, since the chosen language is clear and free from doubt or ambiguity, there is neither room nor need for construction; and that the act must be accepted and applied as its language authorizes and directs.

■ Referring again to the language of that section, we have in the first sentence a grant of authority in these simple and expressive terms:

*"Every person appointed to any office by the mayor, or by the council or elected to office by the people,* may be removed from such office by the council by a five-sevenths affirmative vote of all the members elected." (Italics supplied.)

If the section had ended there, no one could entertain a doubt that an affirmative vote of five-sevenths of "all the members elected" to the council would be sufficient to remove the incumbent without any other or further act. But immediately following is this important sentence limiting or qualifying the one preceding it:

*"But no officer elected by the people* shall be removed except for cause nor until such person shall have had a reasonable opportunity to be heard in his defense." (Italics supplied.)

Clearly, the qualifying sentence limits the power of removal to those whom the people have elected. Applicable to such a person only is the requirement of preferring charges and giving "a reasonable opportunity to be heard in his defense."

Respondent is not within the excepted class. That much is clear. Nor does the mere fact that he was "elected" by the council bring him within that class. Were we so to construe the statute, we should be reading into it something obviously foreign to the exception. We should be engaging in judicial legislation, always to be avoided. As said in Securities and Exchange Comm. v. C. M. Joiner Leasing Corp. 320 U. S. 344, 355, 64 S. Ct. 120, 125: "In the present case we do nothing to the words of the Act; we merely accept them."

■ The rule to be here applied is that if the language employed in a statute or ordinance—

"embodies a definite meaning, and involves no absurdity or contradiction, literal enforcement is required, the statute being 'its own best expositor;' that courts should not nullify obvious requirements by construction; that extrinsic facts can be resorted to in aid of construction only where the intent cannot clearly be ascertained from the statute; and that when we ascertain the true sense of words, the same being their apparent and obvious meaning, we should not seek for others." Oppegaard v. Board of Commissioners, 120 Minn. 443, 447, 139 N. W. 949, 950, 43 L.R.A.(N.S.) 936.

■ In an annotation found in 99 A. L. R. 336, under the heading "Power to remove public officer without notice and hearing," the question of legislative power is thoroughly annotated and discussed and many cases cited to uphold this statement made by the author:

"According to the overwhelming weight of authority the legislature of a state has complete power to remove officers from office, whether they be elective or not, or to authorize their removal, without notice or hearing, subject only to such limitations as the Constitution of the state may impose as to particular offices."

■ In cases decided by this court the same thought is expressed. Thus, in State ex rel. Brandt v. Thompson, 91 Minn. 279, 282, 97 N. W. 887, 888, we held:

"* * * The subject of removal of all officers is within legislative control, and where that body prescribes the manner and method of removal it is exclusive."

So, also, in State ex rel. Early v. Wunderlich, 144 Minn. 368, 371, 175 N. W. 677, 679, we said:

"* * * The manner of making such removals is wholly within the control of the legislature, and when the law which gives the power to remove provides by whom and in what manner that power shall be exercised, the only question open to examination by the courts is whether the statutory requirements have been complied with."

And in Reed v. Trovatten, 209 Minn. 348, 352, 296 N. W. 535, 537, we held:

"* * * A public officer or employe appointed pursuant to statutory authority does not have a vested right to continuance in his position. The legislature may abolish and modify any civil service or preference right which it has granted as well as the remedies for enforcement of the same."

Cf. Sykes v. City of Minneapolis, 124 Minn. 73, 77-78, 144 N. W. 453, 455; Oikari v. Independent School Dist. 170 Minn. 301, 302, 212 N. W. 598.

■ Respondent's argument that he was *elected* by the council and not *appointed* to his office as corporation counsel and that therefore he must be classified with other elective officers is not convincing. True, there is a technical distinction between "appointment" and "election," but, as we pointed out in Van Cleve v. Wallace, 216 Minn. 500, 505, 13 N. W. (2d) 467, 469, there is no particular magic in the choice of one designation over another. "The words 'appointed' and 'elected' are used interchangeably." We

held in that case that the Minneapolis charter authorizing the city council to "elect and appoint a City Attorney" meant no more than any other form of selection and that the two words as there used could be and were so used, *i. e.*, interchangeably. That is obviously the situation here. And as already pointed out, certainly respondent does not come within the class defined by the charter—that of an "officer elected by the people."

■ Unquestionably the charter powers given by § 28 are valid legislative grants and control decision here. Thus, in Park v. City of Duluth, 134 Minn. 296, 298, 159 N. W. 627, 628, where the issue was whether the city possessed the power to levy a wheelage tax upon vehicles using its streets, the proceeds of which were to be used for the maintenance and repair of its highways, this court said:

"* * * Duluth operates under a home rule charter. The Constitution and general laws of the state confer upon the people of a city the power to frame and adopt its own charter. The adoption of such a charter is legislation. The authority which it furnishes to city officers is legislative authority. The people of a city in adopting a charter have not power to legislate upon all subjects, but as to matters of municipal concern they have all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld."

Our cases on this phase are cited and annotated in 4 Dunnell, Dig. & Supp. § 6537.

■ Upon the facts and in the circumstances here appearing and upon the authority of our many prior cases upholding the validity of home-rule charter legislation, we think there can be no doubt that respondent's tenure of office has ended; hence the writ will issue.

So ordered.

Mr. Justice Peterson took no part in the consideration or decision of these cases.