# MINNESOTA MICROWAVE, INC. v. PUBLIC SERVICE COMMISSION.

190 N. W. (2d) 661.

September 24, 1971—No. 42867.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Jan D. Stuurmans,* for appellant.

*Warren Spannaus,* Attorney General, *John R. Kenefick,* Assistant Solicitor General, and *Michael L. Schwab,* Special Assistant Attorney General, for respondent.

*Garfield E. Lovaas* and *Ronald L. Slyter,* for intervenor Northwestern Bell Telephone Company.

*Fisher, Johnson, Evans & Buttrick* and *Wayne C. Serkland,* for intervenor Minnesota Telephone Association.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Kelly, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Ramsey County affirming an order of the Public Service Commission holding that appellant, Minnesota Microwave, Inc., is subject to the jurisdiction of that commission as a supplier of telephone service.

A statement of the pertinent facts is as follows: On December 3, 1968, appellant, a Minnesota corporation with its principal office at Willmar, Minnesota, applied to the Public Service Commission for a certificate of public convenience and necessity authorizing its installation and operation of a microwave television transmission system to transmit educational television materials from the Minneapolis campus of the University of Minnesota to terminals in Rochester, Minnesota. It was anticipated that such service would be supplied to the University of Minnesota as a subscriber on an annual contract basis. The system as planned would involve a series of antennae and relays between Minneapolis and Rochester and would be unidirectional in that no information will be communicated back from Rochester. The system would involve no use of telephone poles, lines, or equipment for the transmission furnished from point to point, although the subscriber would have to use coaxial cables, not owned or supplied by appellant, to convey the material transmitted to and from the terminals of appellant's system.

After the application had been filed and a hearing thereon scheduled, appellant requested that the hearing be indefinitely postponed, having decided to take the position that the Public Service Commission was without jurisdiction over the proposed microwave facilities and services. Accordingly, appellant filed a motion with the commission for a hearing to determine whether the commission had jurisdiction, and a hearing on the matter was held with several parties participating as intervenors. The commission ruled that it had jurisdiction, and appellant appealed to the district court as provided in Minn. St. 1969, § 216.24, and Minn. St. 216.25. No further evidence was submitted to the district court, and the matter was decided on the basis of oral argu-

ment, briefs, and the record made before the Public Service Commission. The trial court affirmed the commission.

The question presented on this appeal is whether a private company which provides, under contract, unidirectional, closed-circuit, microwave facilities for the transmission of educational television signals is subject to the jurisdiction of the Minnesota Public Service Commission as a "telephone company" or a supplier of "telephone service" within the purview of Minn. St. 237.01.

It is our conclusion that the ruling of the district court should be reversed and the question of what regulation, if any, should be applied to suppliers of unidirectional, closed-circuit television facilities should be left to the legislature.

Minn. St. 237.02 provides that the Railroad and Warehouse Commission (now the Public Service Commission by virtue of § 216A.05, subd. 4) is vested with the same jurisdiction and supervisory power over "telephone companies" doing business in this state as it has over railroad and express companies. "Telephone company" is defined by § 237.01 as follows:

"The term 'telephone company,' as used in this chapter, means and applies to any person, firm, association or any corporation, private or municipal, owning or operating any telephone line or telephone exchange for hire, wholly or partly within this state, or furnishing any telephone service to the public."

The Public Service Commission concluded that the term "telephone service" as used in the above statute "is a broad term that must be construed in the light of developments in the art of telephony. The transmission of television signals is one of the advancements in this field. This Commission's jurisdiction is not limited to the state of the art of telephony as it existed in 1915 when regulatory authority was delegated to it by the legislature of this state." The commission therefore concluded:

"The common carrier video and audio transmission service proposed by Applicant constitutes intrastate 'telephone service' over which the Commission has jurisdiction * * *."

The scope of the term "telephone service" as used in the above statute has not been previously considered by this court. Moreover, it appears that the particular question involved in this case has not been confronted in other jurisdictions. Hence, to determine whether the commission and the district court correctly interpreted the statute requires some extended analysis. It appears that the commission has given the term an overly broad interpretation, however—one which if allowed to stand could produce some anamolous results not contemplated by the legislature.

It should be noted at the outset that the scope of review in appeals from decisions of the Public Service Commission is now controlled by the Administrative Procedure Act, Minn. St. 15.0425. Minneapolis Van & Warehouse Co. v. St. Paul Terminal Warehouse Co. 288 Minn. 294, 180 N. W. (2d) 175; Quinn Distributing Co. Inc. v. Quast Transfer, Inc. 288 Minn. 442, 181 N. W. (2d) 696. That statute authorizes any reviewing court to reverse or modify any agency decision where such finding, inferences, conclusion, or decisions are:

"(a)   In violation of constitutional provisions; or

"(b)   In excess of the statutory authority or jurisdiction of the agency; or

"(c)   Made upon unlawful procedure; or

"(d)   Affected by other error of law; or

"(e)   Unsupported by substantial evidence in view of the entire record as submitted; or

"(f)   Arbitrary or capricious."

The reviewing court will not disturb findings of fact made by administrative agencies unless it appears from the entire record that the finding is unsupported by substantial evidence. Quinn Distributing Co. Inc. v. Quast Transfer, Inc. *supra.*

Intervenor Minnesota Telephone Association urges that the commission's conclusion was one of fact and therefore entitled to be respected on review unless unsupported by substantial evidence. That argument, however, gives an overly broad view of

what are questions of fact, for the ultimate question here involved is the interpretation of a statute. Intervenor's approach, if followed, would mean that in nearly every case of statutory interpretation the administrative ruling would effectively be insulated from judicial review unless manifestly arbitrary and capricious. Instead, it is clear that whether appellant is supplying "telephone service" is a question of law to be determined on the basis of the operative facts determined by the commission. Indeed, the commission itself recognized this distinction and treated as a "conclusion of law" rather than as a "finding of fact" its determination that appellant's proposal would constitute "telephone service."

Intervenors also urge that even if the agency's conclusion is treated as one of law, it is nonetheless entitled to great weight in construing the statute as an administrative interpretation of a statute as contemplated in § 645.16(8). While it is undoubtedly true that administrative interpretations may in certain instances be entitled to great weight, it is clear that such is not here the case. The statutory language here under consideration is not exceedingly technical in nature, such that only specialized agencies may be thought able to understand it. Instead, the statute is phrased in common terms, and thus affords no good reason for deferring to administrative expertise for its interpretation. Moreover, the fact that the question now before this court is one which the agency has not had occasion to consider prior to the instant case weighs against placing much weight on the commission's interpretation. Recently, in In re Minnesota Power & Light Co. 289 Minn. 64, 70, 182 N. W. (2d) 685, 689, Mr. Chief Justice Knutson observed:

"It is contended by appellant that the commission's interpretation of the statute is entitled to weight. Ordinarily that is true if the interpretation construes an ambiguous statute and, particularly, if the interpretation is longstanding. In re Estate of Abbott, 213 Minn. 289, 296, 6 N. W. (2d) 466, 469. But here neither of these factors is present. The language of the statute

is not ambiguous, and the ruling was challenged almost immediately."

In the instant case, since the administrative interpretation is not a longstanding one and the statutory language not ambiguous, it is clear that this court is under no obligation to respect the administrative interpretation, particularly where such interpretation is one which operates to expand the jurisdiction of the agency rendering such interpretation.[1] Thus, this court is faced with a pure question of law involving statutory interpretation, one which is not to be decided by deference to the discretion of the administrative agency or the lower court.

On the whole, it appears that the question must be resolved in favor of appellant. The critical question is whether the proposed closed-circuit educational television system would be "furnishing any telephone service to the public" within the meaning of § 237.01, such that the supplier of such service is deemed a "telephone company" and therefore subject to the pervasive regulatory scheme which the legislature has provided for telephone utilities.

Webster's Third New International Dictionary (1961) p. 2350, defines "telephony" in broad terms as—

"the use or operation of an apparatus for transmission of sounds between widely removed points; *specif:* the use of a telephone employing electrical variations or a system of such telephones for such transmission with or without connecting wires."

That definition seemingly would include appellant's proposed system. Clearly, however, the dictionary definition is too broad for legal application for its language would also include, for example, commercial broadcasting of radio and television, activities clearly not within the statutory provisions for regulating telephone companies.

Reference to judicial discussions suggests that for purposes

---

[1] See, also, Ingebritson v. Tjernlund Mfg. Co. 289 Minn. 232, 183 N. W. (2d) 552.

of regulatory statutes the term "telephone service" and related terms are given a more restrictive meaning. It appears that for the most part the term "telephone service" refers to the supplying of facilities for two-way communication. It should be borne in mind that appellant's proposed system would involve only one-way transmission of educational programs.

Television Transmission, Inc. v. Public Utilities Comm. 47 Cal. (2d) 82, 301 P. (2d) 862, is a decision holding that a community antenna television company (CATV) that used telephone lines to distribute commercial television was not a "telephone corporation" within the meaning of the applicable California regulatory statute, and therefore was not subject to the jurisdiction of the state regulatory commission. There the California court distinguished "television" from "telephony" as follows:

"* * * [T]elevision and telephony have in common the transmission of voices, for sounds, including voices [which] usually accompany the pictures of the persons or things televised. Not only are the methods of transmission different in each art, however, but *in telephony one may carry on a two-way communication by speaking as well as listening * * *.*" (Italics supplied.) 47 Cal. (2d) 88, 301 P. (2d) 865; 41 Wd. & Phr. (Perm. ed.) p. 390.

The availability of two-way communication as a factor characterizing telephone service has also been recognized in a different regulatory context by the Federal Communications Commission. In In re General Telephone Co. of California, 13 F. C. C. (2d) 448, affirmed sub nom. General Telephone Co. of California v. F. C. C. 134 App. D. C. 116, 413 F. (2d) 390, certiorari denied, 396 U. S. 888, 90 S. Ct. 173, 24 L. ed. (2d) 163, the F. C. C. was faced with the argument that channel distribution service for CATV systems constituted "telephone exchange service" which is exempted from F. C. C. regulation. In rejecting that contention, the commission placed import on the absence of two-way communication in the television system (13 F. C. C. [2d] 460):

"* * * Manifestly, the phrase [telephone exchange service] is intended primarily to apply to a telephone or comparable service involving 'intercommunication,' i.e., a two-way communication, not the one-way transmission of signals which takes place with respect to CATV channel service."

Although the question has not been considered by this court, it appears that under Minnesota law a CATV company is not subject to regulation as a "telephone company." In an opinion dated June 28, 1965 (No. 840-i), the attorney general indicated that a CATV company using wires to distribute its television signal would not be subject to the jurisdiction of the Public Service Commission since CATV companies "operate under different methods of transmission than telephone companies, and perform different services."

Like CATV systems, the system proposed by appellant involves only one-way transmissions, although it differs from the CATV systems in that it is closed circuit and does not involve transmission of general television programming but rather limited educational programming produced and used by the contracting subscriber, the University of Minnesota.

Moreover, on its face, the proposed transmission system simply does not look like what the legislature must have considered as telephone service. It is not disputed that the grant of jurisdiction made to the commission in 1915 can properly take account of and regulate changes on telephone service brought about by mere changes in the state of the art of telephony. Indeed, the commission has done precisely that in regard, for example, to mobile telephone systems and other activities designed to supplement or to work in conjunction with existing telephone services. See, In re Mobilfone Corp. 81 P. U. R. (3 ed.) 57; In re Application of Metro Fone Communications, Inc. (Public Service Commission M-5205); In re Application of Minnesota Mobile Telephone Company (Public Service Commission M-5234). The activities involved in such cases clearly involved either two-way radio communications interconnected with telephone service or

plans for supplementing ordinary two-way telephone communications and as such clearly fell within what is comprehended by "telephone service," and the jurisdiction assumed by the commission in such cases has not been challenged before this court.

In contrast, however, the system proposed in the instant dispute is not designed to operate in conjunction with ordinary telephone service and involves no two-way communication. It is not even designed to supplement such communication as, for example, was the situation obtaining in one-way paging systems used with mobile telephones. In re Mobilfone Corp. *supra*. Under such circumstances, the nexus between such a system and the commission's mandate to regulate "telephone service" is not apparent.

In reference to the regulatory statutes here under consideration, this court has previously had occasion to describe the substantive evils which the legislature sought to alleviate by the legislation. In State v. Tri-State Tel. & Tel. Co. 204 Minn. 516, 533, 284 N. W. 294, 305, a case challenging the commission's rate schedules, the court described as follows the historical background of the regulatory statute:

*"History.*—In 1904, a time when the art of telephony had attained the dignity of a commercial venture and the industry was in the midst of a period of growth, the company entered the field. The era was one of unfettered competition. The strong attempted to expel from contested territory those less fortified financially by increasing rate wars. Having destroyed opposition, the usual monopolistic evils—discriminatory and excessive rates, undercapitalization, and indifferent service—prevailed. This in turn caused exploited communities to invite invasion by new competing companies to furnish a check upon the victor, and the cycle was repeated."

In the case at hand it is difficult to see how appellant's system, if unregulated, would threaten such evils. Appellant's system, at least as presently contemplated, differs significantly from a telephone company or system providing general service to the

public, for, rather than dealing with the public generally, appellant's closed-circuit system is such that it is suitable only for large subscribers who presumably are in a good position to bargain. The "usual monopolistic evils" referred to in State v. Tri-State Tel. & Tel. Co. *supra,* seemingly are not threatened.

Moreover, it is clear that if appellant is characterized as a "telephone company," it may thereby fall under a large number of specialized statutes designed to deal with the specialized problems of public-utility telephone companies. For example, it appears that if a company is characterized as a "telephone company" under § 237.01, its rates are subject to commission control. Minn. St. 237.06, 237.08. It must file reports with the commission and follow specified accounting procedures, and have its books open to inspection by the commission (§§ 237.10, 237.11); its operation of new service is subject to the commission's approval (§ 237.16); its financing statements may be subject to special statutory provisions (§ 300.111); mortgages of its property must be filed with the secretary of state and secured by its appurtenant personal property as well as by the real property mortgaged (§ 222.18); and sales of its securities may be exempt from registration under the state's Blue Sky Laws (§ 80.05).

In view of the foregoing sample of the ramifications which may obtain from characterizing appellant as a "telephone company," it is difficult to escape the conclusion that such a decision should not be made by an administrative agency, but rather should be left to the legislature. The field of closed-circuit television is a rapidly developing field, in which the operative considerations are likely to be quite different from those involved in providing general telephone service to the public. The legislature may consider what need there is, if any, for state regulation of companies such as appellant and act accordingly. Development of such a regulatory scheme should be left to the legislature and not merely assumed by the Public Service Commission on its own behalf.

Reversed.