Mark H. KLATTE, Relator (C5–85–501),

Michael A. Klatte, Relator (C1–85–544),

v.

ELM CREEK GOLF COURSE, INC., **Department of Economic Security, Respondents.**

Nos. C5–85–501, C1–85–544.

Court of Appeals of Minnesota.

Aug. 6, 1985.

James E. Tiller, Hamel, for relators.

Elm Creek Golf Course, Inc., pro se.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for Department of Economic Sec.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Mark and Michael Klatte appeal from decisions of the Commissioner of Economic Security finding them ineligible to receive unemployment compensation benefits pursuant to Minn.Stat. § 268.07, subd. 3(3) (1984). We reverse.

## FACTS

Relators Michael and Mark Klatte are twin brothers, age 41. They were both employed by the Elm Creek Golf Course, Inc., a family-owned corporation, as greenskeeper and golf "pro," respectively. Their parents own 51 percent of the stock of the business, and the six children, including Michael and Mark, collectively own 49 percent. Each relator owns 8.7 percent of the stock in his own name. Relators receive no dividends from the stock, are not officers or directors of the corporation, have no supervisory duties as stockholders, and have no right of control or actual control of the business. Each relator earns approximately $12,000 per year from his employment at the golf course, and this employment is his primary source of income.

The business shut down for the season on October 31, 1984, and relators filed for unemployment compensation benefits. They each appealed rulings by claims deputies applying the provisions of Minn.Stat. § 268.07, subd. 3(3). On appeal the referees split on the issue: Michael was denied benefits, while Mark was allowed benefits.

On separate appeals to the Commissioner of Economic Security the referee in Mark's case was reversed, and the referee in Michael's case was affirmed. In each case the Commissioner interpreted the provisions of the statute to limit benefits.

## ISSUE

Did the Commissioner of Economic Security properly determine that relators were disqualified from unemployment compensation benefits pursuant to Minn.Stat. § 268.07, subd. 3(3) (1984), which disqualifies an individual who is not permanently separated from employment and "jointly with a * * * parent * * * owns or controls directly or indirectly 25 percent or more interest in the employing unit * * *"?

## DISCUSSION

The analysis of this appeal turns on the meaning of Minn.Stat. § 268.07, subd. 3(3), which provides:

(3) Wages paid by an employing unit may not be used for benefit purposes by any individual who (a) individually or jointly with a spouse, parent or child owns or controls directly or indirectly 25 percent or more interest in the employing unit; or (b) is the spouse, parent or minor child of any individual who owns or controls directly or indirectly 25 percent or more interest in the employing unit; and (c) is not permanently separated from employment.

This clause is effective when the individual has been paid four times the individual's weekly benefit amount in the current benefit year.

The parties agree that relators exercise no control over the business. The question

is whether relators "jointly own" with their parents 25 percent or more interest in the employing unit. The Commissioner, when analyzing this issue, looked to the percentage held by each relator, added that amount to the percentage owned by the parents, found that the combined amount equalled more than 25 percent, and disqualified the relators pursuant to the statute.

■ The Commissioner's interpretation of the statute is consistent with department policy. Generally the courts will defer to the expertise of an administrative agency in interpreting its own statutes. *Knopp v. Gutterman*, 258 Minn. 33, 41, 102 N.W.2d 689, 695–96 (1960). We have noted the deference given to an agency's expertise in its area of technical training and experience. *James v. Commissioner of Economic Security*, 354 N.W.2d 840, 844 (Minn.Ct.App.1984) (citing *Reserve Mining Company v. Herbst*, 256 N.W.2d 808 (Minn.1977)). We note, however, that the language at issue here is not technical, but is phrased in common terms. Thus, the Commissioner's interpretation does not preclude a different construction by this court. *See Minnesota Microwave, Inc. v. Public Service Commission*, 291 Minn. 241, 245, 190 N.W.2d 661, 665 (1971).

■ After careful analysis, we conclude that the Commissioner's interpretation of the term "jointly" was erroneous. By aggregating relators' and their parents' shares, rather than looking to common ownership of stock, the Commissioner has strained the statute beyond its intended meaning. The term "joint" is defined as "[u]nited; combined; undivided * * *," Black's Law Dictionary 751 (5th ed.1979), and is used "to express a common property interest enjoyed * * * by two or more persons." *Id.* "Joint owners" is defined as "[t]wo or more persons who jointly own and hold title to property, *e.g.*, joint tenants, and also partners and tenants in common." *Id.* at 996. We therefore find that the provision in question is intended to disqualify an employee from benefits only if he possesses at least a 25 percent individual interest in the stock of his employing unit or a 25 percent or more interest in common with a spouse, parent or child.

■ The Commissioner's interpretation of the term "joint" would lead to unforeseen and unfair results by disqualifying from benefits an employee who owns a minimal interest in a business in which his or her parents also own an interest. A son or daughter who owns a one percent interest in a business in which he or she exercises no control would be treated the same as someone who owns a majority interest with actual control of the business. A construction of a statute which will lead to an impractical and absurd result should be avoided if the language at issue will bear any other construction. *Bricelyn School Dist. No. 132 v. Board of County Commissioners of Faribault County*, 238 Minn. 53, 57, 55 N.W.2d 597, 599 (1953).

The general purpose of the unemployment compensation statute is to provide benefits to a worker who is unemployed through no fault of his own. Minn.Stat. § 268.03 (1984). The intent of the provision at issue here is to limit the availability of benefits to people who are laid off from employment in their own businesses. Minn.Stat. § 268.07, subd. 3(3), provides a formula for determining when an employee or employee's family owns such a significant interest in the employing business that unemployment cannot be said to be through no fault of the employee. The purpose of this formula would be defeated were we to adopt the Commissioner's construction.

## DECISION

The decision of the Commissioner of Economic Security limiting the availability of unemployment compensation benefits to these relators pursuant to Minn.Stat. § 268.07, subd. 3(3), is reversed.

Reversed.