NORTHWESTERN BELL TELEPHONE
COMPANY, Relator,

v.

MINNESOTA PUBLIC UTILITIES
COMMISSION, Respondent.

No. C8–87–1758.

Court of Appeals of Minnesota.

March 8, 1988.

Review Denied May 16, 1988.

Stephen T. Refsell, Minneapolis, Allan L. Grauer, Omaha, Neb., for relator Northwestern Bell Telephone Co.

Hubert H. Humphrey, III, Atty. Gen., Karl W. Sonneman, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Public Utilities Comm.

Michael J. Bradley, Sp. Asst. Atty. Gen., St. Paul, for respondent Atty. Gen. Residential Utilities Div.

Christopher K. Sandberg, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Dept. of Public Service.

Robert W. Johnson, St. Paul, for Minnesota Telephone Assoc.

Richard J. Johnson, Michael J. Ahern, Moss & Barnett, Minneapolis, for Minnesota Independent Coalition.

Considered and decided by WOZNIAK, C.J., FOLEY and NORTON, JJ., without oral argument.

## OPINION

NORTON, Judge.

Relator Northwestern Bell Telephone Company seeks review of an order by the Minnesota Public Utilities Commission requiring it to file with the Commission schedules of several of its charges to other local exchange companies. We affirm.

## FACTS

Northwestern Bell Telephone Company ("NWB") is a telephone company regulated by the Minnesota Public Utilities Commission ("Commission"). The following statutes require NWB to file schedules of its rates ("tariffs") with the Commission, and to receive Commission approval for any changes in its rates for telephone service to the public:

"Telephone company," means and applies to any person, firm, association or any corporation, private or municipal, owning or operating any telephone line or telephone exchange for hire, wholly or partly within this state, or furnishing any *telephone service to the public.*

Minn.Stat. § 237.01, subd. 2 (1986) (emphasis supp.).

It shall be the duty of every telephone company to file with the department a schedule of its exchange rates, tolls, and charges for every kind of service, together with all rules and classifications used by it in the conduct of the telephone business, all of which shall be kept on file by the department subject to public inspection. * * *

Minn.Stat. § 237.07 (1986).

Unless the commission otherwise orders, no telephone company shall change a rate which has been duly established under this chapter, except upon 60 days notice to the commission. * * * All proposed changes shall be shown by filing new schedules or shall be plainly indicated upon schedules on file and in force at the time.

Minn.Stat. § 237.075, subd. 1 (1986).

NWB provides directory assistance, local operator assistance and repair reporting services directly to the public within its own local exchange service areas. In addition, upon payment of a fee by other local exchange carriers, ("OLECs") NWB will provide these services to OLECs. Some OLECs offer these services to their customers, but others contract with NWB for some or all of the services. In such case, NWB charges the OLECs for the services, and the OLECs, in turn, collect from their own customers.

Prior to 1987, NWB was not required to file tariffs with the Commission regarding its charges to OLECs for directory assistance, local operator service, and repair reporting services. The rates, terms, and conditions regarding these services were, instead, determined by agreement between NWB and the OLECs.

In May 1985, NWB notified the Commission that it intended to modify its charges for several of its services to OLECs, effective June 1, 1985. Thereafter, the Commission issued an order authorizing a summary investigation into NWB's contracts with OLECs regarding these services. The Commission's order indicated that the investigation was prompted by the Commission's concern about the reasonableness of NWB's charges. The Department of Public Services ("DPS") was ordered to perform the investigation and to report its findings to the Commission.

In August 1985, the DPS filed its report, finding that NWB's charges for directory assistance, local operator service, and repair reporting services were reasonable. The DPS recommended, however, that NWB be required to file tariffs with the Commission regarding the charges for these services, rather than continuing to independently contract with individual OLECs.

On August 7, 1987, the Commission issued an order finding that NWB had "imposed a uniform schedule of charges, terms and conditions on the OLECs for the three services in question," asserting that it had the authority to approve or disapprove rates, terms, and conditions associated with the services in question, approving such rates as just and reasonable, and ordering

NWB to file a uniform schedule of rates for each of those three services.

NWB has sought review of the Commission's order, claiming that the Commission lacks authority over NWB's contracts with the OLECs, that the Commission's decision is unsupported by evidence in the record, and that the decision is arbitrary and capricious and violates NWB's due process rights.

## ISSUES

1. Did the Commission exceed its statutory authority when determining that NWB's charges for services to the OLECs must be filed with and receive prior approval by the Commission?

2. Did the Commission's order establish a new rule without following proper rulemaking procedures under the Minnesota Administrative Procedure Act?

## ANALYSIS

1. In reviewing the Commission's determination that it has authority over NWB's charges to the OLECs, we are guided by the following scope of review:

(a) When the * * * Commission acts in a judicial capacity as a factfinder, receives evidence in order to make factual conclusions, and weighs that evidence as would a judge in a court trial, it will be held on review to the substantial-evidence standard.

(b) When the * * * Commission acts in a legislative capacity as in rate increase allocations, balancing both cost and noncost factors and making choices among public policy alternatives, its decisions will be upheld unless shown to be in excess of statutory authority or resulting in unjust, unreasonable, or discriminatory rates by clear and convincing evidence.

*Arvig Telephone Co. v. Northwestern Bell Telephone Co.,* 270 N.W.2d 111, 116 (Minn. 1978), quoting from *St. Paul Area Chamber of Commerce v. Minn. Public Service*

*Comm.,* 251 N.W.2d 350, 358 (Minn.1977) (emphasis omitted.)

Here, NWB claims it is not providing "telephone service" to the OLECs as members of the "public." NWB does not claim that the rates themselves are unjust, unreasonable or discriminatory; thus, the sole issue to be addressed is whether the Commission exceeded its statutory authority[1].

The legislature has not defined the terms "telephone service" or "public" as used in Minn.Stat. § 237.01, subd. 2 and Minn.Stat. § 237.07. Whether NWB is providing service to the public is therefore a question of statutory construction.

In *Arvig,* the Commission had denied a telephone company the authority to install certain new equipment, reasoning that the equipment would provide services which were already being provided by another telephone company. The supreme court reviewed the statutes cited by the parties, and concluded that neither statute was squarely applicable to the parties' dispute. The court stated, however:

> The fact that we find neither [statute] to be exclusively controlling does not mean, however, that we are without guidance in resolving the parties' dispute.

*Id.,* 270 N.W.2d at 116. The court looked at the intent behind the statutes and concluded that it was proper for the Commission to act as it did, "[s]ince the statutes fairly indicate that the legislature intended the commission to rule on such questions." *Id.* at 116.

In *Peoples Natural Gas Co. v. Minnesota PUC,* 369 N.W.2d 530 (Minn. 1985), the supreme court addressed the question whether the Public Utilities Commission had implied authority under its statutes to refund improperly collected rates charged by a public utility. The court stated:

> "[I]t is elementary that the Commission, being a creature of statute, has only those powers given to it by the legisla-

---

**1.** NWB claims that the Commission's decision was arbitrary and capricious and unsupported by substantial evidence. In light of this court's scope of review, which is limited to determining whether the Commission's order exceeded its statutory authority, we need not address this argument.

ture." The legislature states what the agency is to do and how it is to do it. While express statutory authority need not be given a cramped reading, any enlargement of express powers by implication must be fairly drawn and fairly evident from the agency objectives and powers expressly given by the legislature. "Neither agencies nor courts may under the guise of statutory interpretation enlarge the agency's powers beyond that which was contemplated by the legislative body." The question here is whether the legislature intended, without saying so, to confer a refund power on the Commission. We have no ambiguous language to construe, unless perhaps the ambiguity of silence. Consequently, we must look at the necessity and logic of the situation.

*Id.* at 534 (citations omitted). Here, we must therefore determine whether the Commission's authority over the transactions between NWB and the OLECs "is fairly drawn and fairly evident" from the statutes, since the legislature has not expressly addressed this issue.

■ In *Minnesota Microwave, Inc. v. Public Service Commission*, 291 Minn. 241, 190 N.W.2d 661 (1971), the supreme court considered for the first time whether a private company providing unidirectional, closed-circuit, microwave facilities was subject to the jurisdiction of the Commission as a "telephone company" or a supplier of "telephone service." The court stated:

> [W]hether appellant is supplying "telephone service" is a question of law to be determined on the basis of the operative facts determined by the commission.

*Id.* at 245, 190 N.W.2d at 664.

> While it is undoubtedly true that administrative interpretations may in certain instances be entitled to great weight, it is clear that such is not here the case. The statutory language here under consideration is not exceedingly technical in nature, such that only specialized agencies may be thought able to understand it. Instead, the statute is phrased in common terms, and thus affords no good reason for deferring to administrative ex-

pertise for its interpretation. Moreover, the fact that the question now before this court is one which the agency has not had occasion to consider prior to the instant case weighs against placing much weight on the commission's interpretation.

*Id.*, 190 N.W.2d at 665.

> The *Minnesota Microwave* court noted: It appears that for the most part the term "telephone service" refers to the supplying of facilities for two-way communication.

*Minnesota Microwave, id.* at 247, 190 N.W.2d at 665. The court determined that the microwave system simply did not look like what the legislature must have intended by the term "telephone service," stating:

> [T]he system * * * is not designed to operate in conjunction with ordinary telephone service and involves no two-way communication. It is not even designed to supplement such communication. * * *

*Id.* at 249, 190 N.W.2d at 666–67.

Here, on the other hand, NWB's service to the OLECs does operate "in conjunction" with ordinary telephone service, and involves the provision of two-way communication. Certainly, it is designed to at least supplement two-way communication.

The *Minnesota Microwave* court also stated:

> [R]ather than dealing with the public generally, appellant's closed-circuit system is such that it is suitable only for large subscribers who presumably are in a good position to bargain. The "usual monopolistic evils" * * * seemingly are not threatened.

*Id.* at 250, 190 N.W.2d at 667. NWB argues that, in this situation also, since NWB provides its services to large subscribers (i.e., OLECs), its service is not to the "public," as is required by the statute. We cannot conclude here, however, that the size of the subscribers establishes the actual character of the service provided by NWB.

While the large subscriber in *Minnesota Microwave* may have been in a good posi-

tion to bargain, there is substantial evidence in the present case that the OLECs were in no such position. Rather, the Commission noted that the contracts presented to the OLECs were basically uniform, and demonstrated a lack of ability by the OLECs to negotiate.

NWB argues that the Commission lacks the authority to regulate its charges to the OLECs because NWB is not legally obligated to provide the services to the OLECs. Chapter 237, however, does not restrict the Commission to reviewing rates for services which are required; rather, telephone companies must file schedules of rates, tolls, and charges for every kind of service. Minn.Stat. § 237.07 (1986).

NWB also claims that Minn.Stat. § 237.12 (1986) provides the exclusive means for Commission review of relations between Northwestern Bell and the OLECs. This statute governs the physical connection of telephone lines between two companies, and does not govern contracts between companies relating to directory assistance, operator services, or repair services.

In sum, we concur in the Commission's determination that the statutes governing telephone companies as a whole evidence an intent that NWB's charges for directory assistance, local operator and repair reporting services to OLECs must be filed with, and receive prior approval by, the Commission.

■ 2. Finally, NWB argues that because the Commission changed its procedures involving the provision of services by NWB to the OLECs, the Commission should have followed the rulemaking procedures of the Administrative Procedure Act.

Minn.Stat. § 237.07 requires a telephone company providing service to the public to file its rates with the Commission. The Commission determined that NWB was a telephone company providing service to the public, and therefore required NWB to file its rates with the Commission. This was not the promulgation of a new rule, but was merely an interpretation of the terms "telephone company" and "public." *See Reserve Life Insurance Co. v. Commis-*

*sioner of Commerce,* 402 N.W.2d 631, 634 (Minn.Ct.App.1987) *pet. for rev. denied* May 20, 1987:

The statutes' standards of "unfair, unequitable, misleading (and) deceptive" necessitate a certain amount of interpretation. It is reasonable for the Commissioner to make such interpretations and decisions on a case-by-case basis. It would be nearly impossible for the Commissioner to apply additional rules in interpretation of these statutes in light of the various situations which arise requiring department evaluation. Because the agency decided the validity of these policies on a case-by-case basis, the rulemaking requirements of the MAPA are inapplicable.

### DECISION

The decision of the Commission is affirmed.

Affirmed.