JORDAN LAND COMPANY and others, Appellants, vs. FREE-
BORN and others, Respondents.

*March 14—April 3, 1912.*

*Drainage districts: Organization: Who may petition: Corporations
are "adult owners" of land: Statutes construed:*

Corporations owning land in a proposed drainage district are
"adult owners" of such lands within the meaning of sec.
1379—11, Stats. (Supp. 1906: Laws of 1905, ch. 419), and as
such may petition for the organization of the district.

APPEAL from a judgment of the circuit court for Juneau
county: BYRON B. PARK, Judge. *Reversed.*

This is a proceeding to establish the Cutler drainage dis-
trict in Juneau county. It appearing that certain lands had
by mistake been included within the boundaries of the pro-
posed drainage district, the circuit judge made an order
amending and changing the boundaries of the proposed dis-
trict as set forth in the original petition. The proposed dis-
trict as thus changed embraced 20,800 acres.

The petition for the organization of the district states that
the petitioners are all more than twenty-one years of age and
are the owners of more than one half of the lands embraced
within the proposed district. The president of the *Jordan
Land Company* signed in behalf of the company. The *Jor-
dan Land Company,* it appears, owned 11,480 acres of land
in the proposed drainage district and the other signers owned
1,450 acres. The *Jordan Land Company* is a corporation
duly organized under the laws of this state. It appeared dur-
ing the pendency of the petition that certain owners of lands
affected by the proposed organization had not been notified.
They were duly notified.

The court found that the petition did not contain the sig-
natures of a majority of the adult owners of lands within the

proposed drainage district who were of lawful age and repre-
sented one third in area of the lands to be affected by the
work, and that the petition did not contain the signatures
of the adult owners of more than one half of such lands.
This holding of the court was upon the ground that the *Jor-
dan Land Company* was not authorized to sign the petition as
an adult owner.

This is an appeal from the judgment dismissing the peti-
tion and discontinuing the proceedings.

For the appellants there was a brief by *Veeder & Veeder*,
attorneys, and *Adams, Bobb & Adams* and *Olin & Butler*, of
counsel, and oral argument by *J. M. Olin*.

For the respondents there was a brief by *H. J. Mortensen*
and *McFarlane & Price*, and oral argument by *Mr. Mortensen*.

SIEBECKER, J. The drainage district statute (secs.
1379—11 *et seq.*, Stats. Supp. 1906: Laws of 1905, ch. 419)
provides that "whenever a majority of the adult owners of
lands within any district of land," representing one third in
area of the lands therein, or whenever the adult owners of
more than one half of the lands within such district, desire to
organize a drainage district for the purposes and upon the
conditions prescribed by law, they may file a petition contain-
ing the requisite allegations with the appropriate court, pray-
ing for the organization of the district to carry out the powers
and functions authorized by the statutes. As indicated in
the foregoing statement, this is a proceeding to create such a
district. It is set forth in the record that the *Jordan Land
Company* owned 11,480 acres of the 20,800 acres of land em-
braced in the proposed district and that the petition was
signed by the president of the company. The other signers
of the petition owned 1,450 acres of the land. Remonstrants
to the petition objected to its sufficiency upon the ground that
the law does not authorize the land company, as an owner of
lands in a proposed district, to petition the court for the or-

ganization of such a drainage district.   The contention is that a corporation owning such lands is not within the class of landowners designated in the statute as "adult owners of lands within any district of land" which may be organized into a drainage district.   The trial court held that the words "adult owners of lands," as used in the act, indicated a legislative intent to exclude corporations owning such lands from the right to petition for the organization of drainage districts. The phraseology of this section of the statutes originally conferred the right to petition for this purpose upon "owners of lands . . . who shall have arrived at lawful age," and there was similar language in the amendments thereto before the amendments by ch. 419, Laws of 1905, which dropped from the foregoing section the words "who shall have arrived at lawful age" and inserted the word "adult" before the word "owners."   Manifestly, the word "adult" and the phrase "who shall have arrived at lawful age" were employed as equivalents in these statutes.   The use of the word "adult," or the equivalent phrase, no doubt designates in common speech only persons who have arrived at full age or the years of manhood, and when so used does not include artificial beings such as corporations.   The significance of the word "adult" is not necessarily restricted to such general meaning when employed in a statute.   It is familiar that the word "person," though commonly restricted to a human being, may be applied to and include artificial beings, when employed in a statute.   Instances without number exist where words in legislative acts must be interpreted as the legislature used them, though this may enlarge, restrict, or qualify their commonly accepted meanings.   As instances, see *Reiche v. Smythe,* 13 Wall. 162, wherein, under a revenue act, singing birds were held not to be living animals, and *Silver v. Ladd,* 7 Wall. 219, where the words "single man" were construed to include "an unmarried woman."   The particular inquiry, therefore, is not what is the abstract or colloquial meaning of

the word "adult," but in what sense was it used in the act before us.   We must collect the meaning of the word from the context and the purpose of the act in dealing with the subject matter under consideration.   It is obvious from the statutes dealing with the subject of drainage that the legislature, in dealing with the right to petition for the organization of drainage districts, was disposed to confer it upon those most interested in such enterprises, namely, the landowners.   A view of all the provisions to accomplish this purpose manifests the dominant idea of the legislature that the landowner is to be empowered to do what is necessary to establish drainage districts or to oppose their establishment, and to bear the accompanying burdens and obligations.   To carry out these objects and determine upon their feasibility is as vital to the interests of corporate landowners as of individual landowners. These facts and conditions tend strongly to show that the legislature did not intend to exclude corporate landowners from the right to petition.   The words "adult owners," as used in the statute, are sufficiently flexible to admit of including corporate owners within such legislative purpose and aim. Again, the sense of the word "adult," as here used, taken in association with the clauses in another section of the act referring to minors and others incompetent to act for themselves, indicates a grouping of these classes and that "adult" was used to distinguish this class of owners from such legally incompetent classes.   All of these considerations are in harmony with and tend to bring this word within the statutory rule embodied in sec. 4971, Stats. (1898), providing that "the word 'person' may extend and be applied to bodies politic and corporate as well as to individuals," and the rule of construction specified in subd. 2, sec. 4972, Stats. (1898), which provides that "the word 'person' shall extend and be applied to bodies corporate unless plainly inapplicable."   Another consideration supporting the view that corporate owners are embraced within "adult owners" is the fact that such corporate

owners have every other right, duty, burden, or obligation of other landowners within a district. This is of weight as tending to show that the legislature, in conferring on landowners the right of petition as the process for instituting proceedings to establish drainage districts, intended to include corporate owners. We are persuaded that the trial court erred in holding that corporate landowners were not authorized to petition for the organization of a proposed drainage district.

*By the Court.*—The judgment appealed from is reversed, and the proceeding is remanded with directions to the court to entertain the petition for the organization of a drainage district.

WINSLOW, C. J., and MARSHALL and BARNES, JJ., dissent.