STATE of Minnesota, Respondent,

v.

Thomas Jerome IVERSON,
Petitioner, Appellant.

No. C6–01–1930.

Supreme Court of Minnesota.

July 10, 2003.

Allan A. Thoen, Special Assistant State Public Defender, Faegre & Benson LLP, Minneapolis, MN, for Petitioner.

Michael A. Hatch, Minnesota Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

PAUL H. ANDERSON, Justice.

Thomas Jerome Iverson pleaded guilty in 1992 to second-degree criminal sexual conduct. This conviction subjected him to the residence registration requirements of the predatory offender registration statute, Minn.Stat. § 243.166 (1998 & Supp. 1999). In 1993, Iverson registered an address in accordance with the statute, but the police later discovered that this address did not exist. In 1999, Iverson pleaded guilty to the gross misdemeanor charge of violating the residence registration requirements of the statute. Nevertheless, he again failed to provide any updated address information as required by the statute. Two years later, authorities discovered they still had invalid registration information, so Iverson was arrested and prosecuted for a second violation of the residence registration requirements, which is a felony. He pleaded guilty to this charge, but stated during the plea hearing that he failed to register because he was homeless. Iverson was then sentenced to a stayed 13–month incarceration with a probationary period of 5 years, during which he would be required to check in daily with local police.

On appeal, the court of appeals affirmed the district court, but modified Iverson's check-in requirement to require that he notify the police only when he changes his "living location." Iverson petitioned this court for review of the issues of the factual

basis of his guilty plea and ineffective assistance of counsel. We conclude that Iverson did not waive the argument that his plea was not supported by a sufficient factual basis and remand for further proceedings consistent with this opinion.

Appellant Thomas Jerome Iverson pleaded guilty in 1992 to second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343 (2002). As a result of that conviction, Iverson was obligated to follow the registration procedures outlined in the predatory offender registration statute, Minn.Stat. § 243.166 (1998).[1] Iverson was given notice of the registration procedures and requirements. The statute requires that Iverson register with his corrections agent or, if he does not have a corrections agent, that he "register with the law enforcement agency that has jurisdiction in the area of [his] residence." Minn.Stat. § 243.166, subd. 3(a) (1998). One of the required components of the registration is "a statement in writing signed by the [offender], giving information required by the bureau of criminal apprehension." Minn.Stat. § 243.166, subd. 4(a) (Supp.1999).

The statute also requires that "[a]t least five days before the [offender] starts living at a new address * * * the [offender] shall give written notice of the new living address to the assigned corrections agent or to the law enforcement authority with which the [offender] currently is registered." Minn.Stat. § 243.166, subd. 3(b). To ensure that offenders maintain current information with the registration authorities, "[e]ach year within 30 days of the anniversary date of the [offender's] initial registration," the Minnesota Bureau of Criminal Apprehension (BCA) mails an ad-

dress verification form to the address the offender provided and the offender is required to return the verification within ten days of receiving it. Minn.Stat. § 243.166, subd. 4(c)(1) and (2). Finally, it is a gross misdemeanor to knowingly violate any of the provisions of the registration statute, and if an offender is convicted of violating the registration statute, any subsequent violation is a felony. Minn.Stat. § 243.166, subd. 5 (1998).

On October 22, 1993, Iverson registered a Minneapolis address as required by the registration statute. In 1997, authorities discovered that the Minneapolis address did not exist, and Iverson was charged with the gross misdemeanor of failing to register in violation of Minn.Stat. § 243.166, subd. 5. He pleaded guilty in August 1999, but when released from jail in September 1999, Iverson was homeless and, having no residential address to report, he again failed to register any new address information.

On February 7, 1997, February 18, 1997, May 26, 1998, and May 22, 2000, the BCA sent address verification letters to the address Iverson provided in 1993, and all the letters were returned by the post office. In March 2001, the police attempted to visit the Minneapolis address Iverson provided in 1993 and again discovered it did not exist. A prosecution of Iverson for felony failure to register was initiated in May 2001. He pleaded not guilty and a trial was set for July 23, 2001. On July 19, 2001, Iverson filed a motion to dismiss the charge, claiming that application of the residence registration requirements to him as a homeless person results in violations of due process and equal protection. At the July 23, 2001 hearing, however, the

---

1. Statutory references are to the 1998 statute and 1999 supplement because Iverson was convicted under the 1999 statute. While the original complaint alleged that Iverson violat- ed the registration requirements in March 2001, the parties agreed to amend the complaint to change the date of the offense to September 1999.

state announced the parties had reached a plea agreement according to which Iverson would plead guilty in exchange for a stayed sentence.

During the plea hearing, Iverson admitted that he had been obligated to register in 1999 and that he had failed to do so, but stated that he failed to do so because "I didn't have any place to stay, I was homeless." The district court ordered a presentence investigation "to determine * * * how to assist Mr. Iverson, who is homeless, in a way that he can register where he is and stay within compliance of the registration requirements." During the plea hearing, Iverson also acknowledged the rights he was waiving and his satisfaction with his attorney's performance.

On August 7, 2001, Iverson was sentenced to a 13–month stayed sentence with a probationary period of 5 years, during which he would be required to comply with the residence registration requirements by making daily reports of his location to the police. During the sentencing hearing, the district court discussed the presentence investigation that had been done and noted the following:

> The answer to that question [of how a homeless defendant can comply with the registration statute] as provided by the Minnesota Bureau of Criminal Apprehension is that the defendant while homeless is required to check in to the police station on a daily basis. The bureau assures me that there are individuals who are complying in that manner. That task does not seem difficult for Mr. Iverson as he acknowledges having had daily contact with the police while living on Lake Street.

Accordingly, the court notified Iverson that "[t]he law requires you, Mr. Iverson, if you are going to be homeless, to check in with the police station everyday and presumably, any day that you don't, potential-

ly subjects yourself to further felony prosecutions."

The court of appeals affirmed the district court and held that, in pleading guilty, Iverson waived the challenge of the statute's applicability to the homeless and he received effective assistance of counsel. The court modified the probationary daily check-in requirement and stated that Iverson would be required instead to

> report[ ] each change of living location. If Iverson changes the location of where he is living on a daily basis, then he is required to report this change daily to the authorities. But if he stays in a shelter or other specific location for several days or weeks, he can comply with the statute by reporting only when he changes his living location.

*State v. Iverson,* No. C6–01–1930–2002 WL 31012999 at *4 (Minn.App. Sept. 10, 2002). Iverson petitioned this court for review of the issues of whether, as a homeless offender, there was a factual basis for his guilty plea to failing to register a residence address and whether he received effective assistance of counsel.

### I.

We first address Iverson's argument that his guilty plea was not supported by a sufficient factual basis because as a homeless person he had no address or residence to register and cannot be guilty of failing to register such an address or residence under the statute. To be valid, a guilty plea must be intelligent, voluntary, and accurate. *State v. Trott,* 338 N.W.2d 248, 251 (Minn.1983); *State v. Ecker,* 524 N.W.2d 712, 716 (Minn.1994). Accuracy requires that the plea be supported by a proper factual basis, that there "must be sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Kelsey v. State,* 298 Minn.

531, 532, 214 N.W.2d 236, 237 (1974). The factual basis of a plea is inadequate when the defendant makes statements that negate an essential element of the charged crime because such statements are inconsistent with a plea of guilty. *Chapman v. State,* 282 Minn. 13, 20, 162 N.W.2d 698, 703 (1968); *State v. Jones,* 267 Minn. 421, 426–27, 127 N.W.2d 153, 156–57 (1964).

■ The state argues that Iverson waived the argument that the residence registration requirements of the statute do not apply to him as a homeless offender when he pleaded guilty to the charge, because "a guilty plea by a counseled defendant operates as a waiver of all nonjurisdictional defects," which include constitutional violations and potential defenses to the charged offense. *State v. Lothenbach,* 296 N.W.2d 854, 857 (Minn.1980). A claim that the factual basis for the plea was insufficient, however, is a challenge to the validity of the plea itself. Thus, by pleading guilty, a defendant does not waive the argument that the factual basis of his guilt was not established. *See Ecker,* 524 N.W.2d at 716–17, and *State v. Hoaglund,* 307 Minn. 322, 240 N.W.2d 4, 5–6 (1976).

We agree with Iverson that he has not waived his claim that the residence registration requirements of the statute do not apply to him as a homeless offender. If Iverson's interpretation of the statute is true, he pleaded guilty to violating a statute that does not apply to him, which negates the factual basis of the plea and renders the plea invalid. Iverson declared during the plea hearing that his "homeless[ness]" was the reason for his lack of compliance. If the residence registration requirements of the statute are not applicable to "homeless" offenders, then Iverson made statements that were contrary to his guilty plea and a sufficient factual basis for the plea was not established. *See Chapman,* 282 Minn. at 20, 162 N.W.2d at 703; *Jones,* 267 Minn. at 426–27, 127 N.W.2d at 156–57. Therefore, we conclude that Iverson has not waived his argument that the residence registration requirements of the statute do not apply to him if he is a homeless person.

## II.

■■ Having concluded that Iverson's argument was not waived, we must now determine whether there was a factual basis for his plea. Iverson argues that the residence registration requirements of the predatory offender registration statute do not apply to him as a homeless offender because they impose no residence registration duties on offenders who have no "address" or "residence" to report.[2] The state asserts that the policy goals of the legislature support interpreting the statute as applying to homeless offenders, just as the lower courts did. Thus, we must decide whether the residence registration requirements of the statute can be applied to homeless offenders. This determination requires that we interpret the registration statute, and statutory interpretation is a matter of law that we review de novo. *State v. B.Y.,* 659 N.W.2d 763, 767 (Minn. 2003).

■ "Our goal in cases involving statutory interpretation is, of course, to give effect to the intention of the legislature in drafting the statute." *State v. Orsello,* 554 N.W.2d 70, 74 (Minn.1996) (alternate holding superceded by statute). The best method of divining legislative intent is by

---

**2.** Iverson admits that he had an obligation to inform authorities that the address he gave in 1993 was no longer valid, but he contends that this obligation was discharged by his 1999 conviction. He contends that, as an offender with no fixed "address" or "residence," he had no further obligations under the statute.

relying on the plain meaning of the statute. As we have consistently stated, we will look beyond the plain meaning of the statute only if the text is ambiguous. *See, e.g., Gomon v. Northland Family Physicians, Ltd.,* 645 N.W.2d 413, 416 (Minn. 2002) (stating that this court is precluded from engaging in statutory construction if the language of the statute is clear); *State v. Loge,* 608 N.W.2d 152, 156–57 (Minn. 2000) ("[W]here the language of the statute is clear, the court is bound to give effect thereto.").

The relevant language of the registration statute follows:

Subd. 3. **Registration procedure.** (a) A person required to register under this section shall register with the corrections agent as soon as the agent is assigned to the person. [Or, if there is no assigned agent] * * * the person shall register with the law enforcement agency that has jurisdiction in the area of the person's *residence.*

(b) At least five days before the person starts *living* at a new *address,* * * * the person shall give written notice of the new *living address* [to the appropriate authority]. * * * [The BCA will then] notify the law enforcement authority having primary jurisdiction in the community where the person will live of the new *address.*

Subd. 4. **Contents of registration.** * * * [ (c) ](1) Each year, within 30 days of the anniversary date of the person's initial registration, the bureau of criminal apprehension shall mail a verification form to the last reported *address* of the person.

(2) The person shall mail the signed verification form back * * * stating on the form the current and last *address* of the person.

Minn.Stat. § 243.166 (emphasis added). Iverson points to the legislature's use of the terms "residence," "living address," and "address" as proof that the residence registration requirements of the statute cannot apply to someone who is homeless because none of those terms can be properly applied to a homeless person.

The state argues that those terms should be read broadly to mean the offender's living location. In support of its position, the state points to other statutes in which the legislature chose to define the terms address and residence,[3] and asserts that in declining to provide definitions for the terms in this statute the legislature intended that the terms be given a broader meaning than they are given in other statutory contexts. We are not persuaded by this argument. It does not follow that the legislature's choice not to define a term indicates a preference for a broad definition. If the legislature intended the terms to be read broadly, it could have provided broad definitions.

■ In the absence of a statutory definition, we must rely on the obvious meaning of the terms. *State ex rel. City of St. Paul v. Oehler,* 218 Minn. 290, 296, 16 N.W.2d 765, 768 (1944) (stating that in statutory interpretation, "when we ascertain the true sense of words, the same being their apparent and obvious meaning, we should not seek for others") (quoting *Oppegaard v. Board of Comm'rs,* 120 Minn. 443, 447, 139 N.W. 949, 950 (1913)).

**3.** In the business corporation context, " '[a]ddress' means mailing address, including a zip code. In the case of a registered office or principal executive office, the term means the mailing address and the actual office location which shall not be a post office box." Minn. Stat. § 302A.011, subd. 3 (2002). In the family law context, " '[r]esidence' means the place where a party has established a permanent home from which the party has no present intention of moving." Minn.Stat. § 518.003, subd. 2 (2002).

The difficulty this analytical approach presents is that there may be different obvious meanings for the terms residence, living address, and address; yet, the legislature has used them interchangeably. Therefore, we must determine whether there is an obvious definition for these terms that is broad enough to accurately describe all three.

In its attempt to give meaning to these terms, the court of appeals focused on the term living address, which it defined as "living location," and presumably determined that this broad definition could also describe the terms residence and address. In arriving at that definition, the court of appeals relied largely on legislative history:

> In 1997, the legislature amended the statute to require reporting each time a person "starts living at a new address." *See* 1997 Minn. Laws ch. 239, art. 5, subd. 3(b). Prior to this change, an offender was deemed to have changed residences "when the offender remains at a new address for longer than three days and evinces an intent to take up residence there." Minn.Stat. § 243.166, subd. 3(b) (1996). The legislature amended the statute because the language in the 1996 law was problematic. House counsel noted that "the real need is for knowing where that person is living whether or not * * * it's temporary or permanent."

*Iverson,* 2002 WL 31012999 at *3 (citation omitted). Determining that the statute required Iverson to report his living address, the court stated that compliance required a check-in each time Iverson changed locations, be that daily or every few days or weeks. *Id.* The state relies on this legislative history to assert that the legislature considered the problem of homeless offenders and articulated an intent that the statute cover *any* location an offender is

actually living, regardless of its permanence.

The court of appeals' definition for the terms residence, address, and living address is appealing in that it appears to forward the intent shown by the legislative history, and it lightens the reporting burden for a homeless offender from the daily check-in requirement suggested by the district court to a reporting requirement more consistent with the offender's living situation. As discussed previously, however, the legislative history can only be considered in the absence of clear language. Here, the court of appeals' definition of the terms leads to some inconsistency within the statute and therefore contradicts the obvious meaning of these terms.

The most salient of these inconsistencies are found by applying the "living location" definition to (1) the requirement that the offender give notice of an intent to change "living address[es]" "[a]t least five days before the person starts living at a new address"; and (2) the requirement that the offender return a verification form that has been "mail[ed] * * * to [his] last reported address[.]" Minn.Stat. § 243.166, subd. 3(b), subd. 4(c)(1) and (2). These requirements indicate that, at the least, the definition for "residence," "address," and "living address" must include the characteristics of an offender knowing about the living situation at least five days in advance of moving there, and that it be a place at which an offender can receive mail. The court of appeals' definition does not include these characteristics and therefore allows application of the residence registration requirements of the statute to offenders who are living in places to which these characteristics cannot be applied.

The statutory inconsistencies created by the court of appeals' definition highlight the most difficult challenge we face in attempting to determine whether the resi-

dence registration requirements of the statute apply to homeless offenders—not all homeless people suffer from the same degree of instability in their living situation. For example, an offender who sleeps one night on a park bench, the next under a bridge, the next at a bus stop, and so on, is in a significantly different position from an offender who lives in a shelter for three weeks or on a couch in a friend's apartment for six months. The first of these homeless offenders does not enjoy a "living location" to which the statute could apply because he never has five days' notice of where he will be and he cannot receive mail at any of those locations. The second of these homeless offenders, however, can comply with the statute because each of his "living locations" is such that he can provide sufficient notice of his intent to move there and he can receive mail there.

For the foregoing reason, we conclude that a bald assertion that one is homeless may not preclude application of the residence requirements of the statute. A factual inquiry into the offender's living situation is required to determine whether compliance is possible. Compliance is required, even for homeless offenders, if they live somewhere where mail can be received and they can provide five days' notice that they will be going there. If the location fits both of these criteria, then the offender must register the location.

■ If the offender's "living location" does not fit these criteria, the statute does not address how compliance can be achieved. The district court sought a presentence investigation on this issue and received a recommendation from the BCA, which it implemented, that a daily check-in requirement is necessary for such offenders. The state notes that there are other homeless offenders for whom this suggestion has been implemented. While we recognize the utility of the BCA's interpreta-

tion of the statute, the BCA is not the legislature. We cannot ignore the language of the statute in order to effectuate the interests of the BCA, or even the suggested intent of the legislature. Where the language is clear, we must interpret it accordingly. Here, in order to maintain internal consistency within the statute, we interpret the statute to limit the residence reporting requirements to locations at which mail can be received and of which the offender can have five days' notice that he will live there.

We find support for our position in the outcome reached when the state of Washington was faced with this issue. The Washington Court of Appeals determined that a registration statute similar to ours did not apply to "homeless" offenders because offenders who were unaware of where they would sleep each night could not provide the sheriff with an address or residence where they could be contacted. *State v. Pickett*, 95 Wash.App. 475, 975 P.2d 584, 587 (1999). The court noted that no statutory definition was given for the term "residence" and accordingly assigned the term its "ordinary meaning"—a "place where a person lives as either a temporary or permanent dwelling, a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." *Id.* at 586. The court was helped in its decision by a definition of the term homeless as provided by the Washington Supreme Court, "as 'having no home or permanent place of *residence*.'" *Id.* (emphasis added). Based on these definitions, the Washington court held that "[b]ecause 'residence' and 'residence address' connote some permanence or intent to return to a place, it is impossible for [the defendant] to comply with the statute as written." *Id.* at 586–87.

As a result of *Pickett*, the Washington legislature "amended the statute in 1999 to

establish comprehensive registration requirements for convicted sex offenders lacking a fixed residence." *State v. Tamas*, 114 Wash.App. 1039, 2002 WL 31555366 at *2 (Wash.Ct.App. Nov.18, 2002). Three of the other four states to have addressed this issue have similarly left it to the legislature to dictate how offenders with no fixed living location can comply with a registration requirement.[4] We conclude that such a result is appropriate in this case as well.

We recognize that our decision may place an additional burden on district courts because they will be required to conduct a factual inquiry as to the degree of an offender's "homeless[ness]." We also recognize that this result makes it impossible to apply the residence registration requirements of the statute to a group of offenders to whom the legislature probably intended the statute to apply. We do not mean to suggest, however, that the legislature cannot create a law that imposes reasonable residence registration requirements on homeless offenders who cannot comply with the current residence registration requirements. We simply observe that the current statute, as written, does not impose any such requirement.

Recognizing that amendment of any statute is the responsibility of the legislature, we leave it to the legislature to decide whether to fashion a residence registration requirement that can be applied to homeless offenders whose living locations are not known at least five days in advance and at which no mail can be received. Accordingly, we hold that the residence registration requirements of the current statute do not apply to such homeless offenders.

## III.

■ Turning to Iverson's appeal, we note that the record does not indicate the degree of Iverson's "homeless[ness]." We know that he stated during the plea hearing that he did not comply with the law because he was "homeless." The district court conducted a presentence investigation to address how he could comply as someone who has been homeless for the last ten years, and at his first appearance his attorney stated, "he informs me he does not have a place to stay at this point." We have no more information about Iverson's living situation during the period in which he failed to register.

---

4. Four other states have addressed this issue and applied the registration requirements to homeless offenders. Cal.Penal Code § 290, subd. (a)(1)(B) (2002) (requiring offenders register their "address or location at which he or she regularly resides or is located," and thereby avoiding having to define the terms "address" or "residence"); *Roe v. Attorney General*, 434 Mass. 418, 750 N.E.2d 897, 902 n. 14 (2001) (citing Mass. Gen. Laws ch. 6, §§ 178F, 178F½) (1999) (relying on a statute that explicitly requires that homeless offenders verify their registration data every ninety days); *State v. Rubey*, 611 N.W.2d 888, 891–92 (N.D.2000) (noting that "[a]llowing sex offenders to circumvent the registration process by physically leaving one residence without technically acquiring a new residence would permit the offender to 'slip through the cracks,' disappear from law enforcement view

and thus thwart the purpose for which this law was enacted" but relying on the documented legislative decision not to include the broader "address or living location" language, and defining "address" to include residence or mailing address). Cf. *State v. Beasley*, 2001 WL 1152871, *2 (Ohio Ct.App. Sept. 27, 2001) ("We reject defendant's argument that his homelessness prevented him from having an 'address' that he could report as a change because his failure to maintain a stable residence cannot be subordinated to the compelling public interest in tracking the whereabouts of sexual offenders."); *see State v. Parrish*, 2000 WL 1862821 (Ohio Ct.App. Dec.18, 2000) (affirming, in an unpublished opinion, the district court that rejected a homeless offender's argument that the registration statute did not apply to him).

As discussed previously, in order for Iverson's plea to be valid, a sufficient factual basis for the plea must have been established. We cannot tell from the plea transcript exactly what Iverson's living situation was. We do know that the district court determined that Iverson's living situation was unstable enough for the court to decide that a daily check-in with local authorities was the only way Iverson could comply with the statute. However, we do not know whether the court would reach the same conclusion if it had interpreted the statute in accordance with this opinion. Accordingly, we remand to the district court for a determination of whether Iverson is the type of "homeless" offender to whom the residence registration requirements of the statute can be applied.

Having held that Iverson did not waive the claim that his plea was invalid, we need not reach his allegation that he was denied effective assistance of counsel.

Reversed and remanded.