*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1183**

State of Minnesota,
Respondent,

vs.

Robert William Neft,
Appellant.

**Filed May 18, 2015
Affirmed
Hudson, Judge**

St. Louis County District Court
File No. 69DU-CR-13-5179

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Jonathan D. Holets, Assistant County Attorney, Duluth, Minnesota (for respondents)

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie M. Willett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant argues that he should be permitted to withdraw his guilty plea to aiding and abetting attempted second-degree intentional murder because the plea was

inaccurately made. He also challenges his agreed-upon 150-month guidelines sentence, arguing that it was unjustifiably disparate from that of his co-defendant. We affirm.

## FACTS

After the robbery and shooting of a store owner, the state charged appellant Robert William Neft with aiding and abetting second-degree attempted murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2012), "with reference to [Minn. Stat. §§] 609.17.1 [(2012)], 609.05.1 [2012])"; and aiding and abetting first-degree aggravated robbery. The probable-cause portion of the complaint alleged that the victim called 911, reporting that he had been shot and robbed. When police responded, they discovered a gunshot wound going completely through the victim's chest. Police recovered a BB gun, a mask, a single glove, tape, and electronic equipment strewn about. The victim described his assailants as white males, wearing black hooded sweatshirts and masks, with one carrying a revolver. He alleged that they demanded money and he thought their guns were fake, so he struggled to pull the mask off one man; he then heard shots, saw them take cash and a laptop, and watched them drive off in an older sedan. A witness also observed two white males leave the area and drive off quickly in an older sedan. Outside an apartment building, investigating police located an older sedan containing a single glove in plain view on the seat, matching the one found at the robbery location. Another person told police that she had seen B.T. with a gun similar to that described by the victim and that he mentioned a shooting.

Police arrested Neft when he was seen exiting the apartment and driving away in the sedan. After a *Miranda* warning, he gave a statement to police admitting that he and

2

B.T. had donned masks and entered the store to commit a robbery, carrying, respectively, a BB gun and a revolver. He told police that B.T. hit the victim in the head with a pistol and eventually shot him in the chest.

Neft agreed to plead guilty to aiding and abetting second-degree attempted murder, with the robbery charge to be dismissed. The state agreed to seek a 150-month executed guidelines sentence, and the United States Attorney agreed not to prosecute Neft in federal court. At a plea hearing, Neft acknowledged that he had reviewed the agreement with his attorney, understood the concept of aiding and abetting, and had no question about its meaning. As a factual basis for the plea, he stated that, after giving his fiancée a ride to a cell-phone store along with B.T., he and B.T. "decided . . . to rob the store together" and went inside when she came out. He stated that they did "not really" prepare for the robbery, but "just had stuff in the car that [they] used," including masks, gloves, tape, and a backpack. In response to his attorney's questions, he acknowledged that he had a BB gun, was aware that B.T. was carrying a real gun, and entered the store with B.T. intending to rob it, with the guns and masks for that purpose. He stated that he "froze" after he entered, that B.T. started yelling at the victim and hitting him in the head, and Neft tried to cover the victim's head to keep him from getting pistol whipped, dropping his BB gun. The victim then stood up, B.T. shot at both of them, and Neft left the store. Neft told the district court that he turned around and saw B.T. and the victim fighting on the ground outside, and that B.T. "ended up shooting" the victim. He stated that he was "about half a block away" when the shooting occurred and did not then know

that the victim had been shot. He indicated that he and B.T. obtained cash and a laptop from the robbery.

The following colloquy subsequently occurred:

DISTRICT COURT: You know that by pleading guilty you are admitting that you entered into this with [B.T.] and you aided and abetted the result, which is—could have killed [the victim]? We could have it charged as aiding and abetting, right?

DEFENDANT: Yeah.

DISTRICT COURT: Is that what you did that day?

DEFENDANT: Yeah.

DISTRICT COURT: Do you own that?

DEFENDANT: Yeah.

DISTRICT COURT: All right. I'm satisfied with the factual basis.

The district court accepted the plea and sentenced Neft to 150 months, a presumptive sentence for his attempted offense of aiding and abetting second-degree intentional murder. This appeal follows.

**D E C I S I O N**

**I**

Neft argues that because his guilty plea did not contain an adequate factual basis, it should be vacated as inaccurate. Although Neft did not seek plea withdrawal before the district court, a defendant may "simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate." *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). The validity of a guilty plea presents a

4

question of law, which we review de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

A defendant may withdraw a guilty plea after sentencing only to correct a manifest injustice, Minn. R. Crim. P. 15.05, subd. 1, which occurs when a guilty plea is not "accurate, voluntary, and intelligent." *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). A defendant has the burden to show that his plea was invalid. *Raleigh*, 778 N.W.2d at 94. "The accuracy requirement protects a defendant from pleading guilty to a more serious offense than that for which he could be convicted if he insisted on his right to trial." *Id.* "To be accurate, a plea must be established on a proper factual basis," which is adequate "if the record contains sufficient evidence to support the conviction." *Id.*

"The factual basis of a plea is inadequate when the defendant makes statements that negate an essential element of the charged crime because such statements are inconsistent with a plea of guilty." *State v. Iverson*, 664 N.W.2d 346, 350 (Minn. 2003). Neft argues that the record is insufficient to establish an adequate factual basis for his plea to attempted second-degree intentional murder. A person is guilty of second-degree intentional murder if the person "causes the death of a human being with intent to effect the death of that person or another, but without premeditation." Minn. Stat. § 609.19, subd. 1(1). A person may be found guilty of an attempt to commit a crime if that person "with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime." Minn. Stat. § 609.17, subd. 1. "An attempt requires that the actor have specific intent to perform acts and attain a result

5

which if accomplished would constitute the crime alleged." *State v. Noble*, 669 N.W.2d 915, 919 (Minn. App. 2003), *review denied* (Minn. Dec. 23, 2003). Because the intent element of a crime involves a state of mind, it is generally proved by circumstantial evidence. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997); *see Smith v. State*, 596 N.W.2d 661, 665 (Minn. App. 1999) (holding that facts elicited during a plea colloquy may suffice to infer guilt), *review denied* (Minn. Aug. 27, 1999).

Neft maintains that the facts he recited during the plea colloquy did not affirmatively establish that he intended to cause the victim's death or that he took a substantial step toward killing him, but only that he intended to commit a robbery. But Neft was charged with aiding and abetting attempted second-degree intentional murder. A person is guilty of aiding and abetting an offense "if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1. And a person is also liable as an accomplice for "any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." Minn. Stat. § 609.05, subd. 2. "Under Minnesota law, a defendant charged as an accomplice to . . . murder is not required to have predicted that a companion would murder the victim." *State v. Richardson*, 670 N.W.2d 267, 281 (Minn. 2003). "Rather, the question is whether the murder was reasonably foreseeable as a probable consequence of the intended crime . . . ." *Id.*

The Minnesota Supreme Court has recently "reiterat[ed] that Minn. Stat. § 609.05, subd. 2 does not impose an independent state-of-mind requirement." *State v. McAllister,*

6

___ N.W.2d ___, ___, 2015 WL 1545283, at *7 (Minn. Apr. 8, 2015). In other words, "[o]nce the defendant's state of mind has been proven for the 'intended crime' under Minn. Stat. § 609.05, subd. 1, the defendant is also 'liable' for any other reasonably foreseeable crimes committed in pursuance of the intended crime under Minn. Stat. § 609.05, subd. 2." *Id.* Thus, the supreme court has concluded that the evidence was sufficient to sustain a conviction of aiding and abetting homicide when the jury could have reasonably inferred accomplice liability, based on evidence that the defendant was aware that the actor possessed a gun, and the defendant stated after the attack that "he figured that [the victim] would have gotten shot." *State v. Pierson*, 530 N.W.2d 784, 789–90 (Minn. 1995) (emphasis omitted).

Neft argues that, although he knew that B.T. had a gun, he did not encourage its use and placed himself over the victim to protect him from B.T. He also points out that the shooting occurred after the robbery was complete, when the victim struggled with B.T. outside the store, and that he chose to leave the situation. But during the plea colloquy, Neft admitted to the district court that he aided and abetted in the result of B.T.'s actions, which "could have killed" the victim. *See, e.g., State v. Jackson*, 726 N.W.2d 454, 460–61 (Minn. 2007) (concluding that the evidence was sufficient to sustain conviction of aiding-and-abetting first-degree murder while attempting to commit aggravated robbery, based on evidence that the defendant, "as an accomplice . . ., was aware of the basic details of the plan to use force or to threaten the use of force"). Additionally, the probable-cause portion of the complaint is consistent with Neft's version of events, including his knowledge that B.T. possessed a gun and his statement to

7

police that he and B.T. had been in the store earlier that day. *See State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) (concluding that an adequate factual basis existed when the "defendant, by his plea of guilty, in effect judicially admitted the allegations contained in the complaint"). Based on Neft's acknowledgment that they entered the store to commit a robbery, that B.T. possessed a gun during the robbery, and that the shooting "could have killed" the victim, a reasonable inference exists that Neft could reasonably have foreseen that a victim would be murdered in the course of committing the aggravated robbery, making him liable as an accomplice to second-degree attempted murder under Minn. Stat. § 609.05, subd. 2.

We finally note that the plea colloquy contained several of Neft's brief responses to leading questions. The Minnesota Supreme Court has "cautioned against the use of exclusively leading questions to establish a proper factual basis for a guilty plea." *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012). But the supreme court has declined to consider pleas inaccurate based only on that circumstance. *See, e.g., id.*; *Raleigh*, 778 N.W.2d at 95–96. Therefore, while disfavored, the district court's use of leading questions does not invalidate Neft's guilty plea, and he has not carried his burden to show that his plea was inaccurate.

## II

Neft challenges the district court's imposition of a 150-month guidelines sentence, the same sentence received by B.T., his co-defendant. This court reviews the district court's sentencing decision for abuse of discretion. *State v. Ford*, 539 N.W.2d 214, 229 (Minn. 1995). A district court abuses its discretion when a sentence unfairly exaggerates

the criminality of the defendant's conduct. *State v. McLaughlin*, 725 N.W.2d 703, 715 (Minn. 2007). We will rarely disturb the district court's decision to order a presumptive sentence, even if grounds exist that would justify departure. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006).

Neft maintains that, because he was less culpable than B.T., the district court abused its discretion by not departing downward and sentencing him to 69 months, commensurate only with aggravated robbery. An appellate court may modify a sentence on many grounds, including in the interest of fairness and uniformity. Minn. Stat. § 244.11, subd. 2(b) (2012). But "equality and fairness in sentencing involve more than comparing the sentence the appealing defendant received with the sentence his accomplices received. It also involves comparing the sentence of the defendant with those of other offenders." *State v. Vazquez*, 330 N.W.2d 110, 112 (Minn. 1983). A defendant is not necessarily entitled to the same sentence received by a co-defendant or accomplice, even if the defendant's conduct is shown to be less culpable. *See id*. at 112–13.

The Minnesota Sentencing Guidelines set forth presumptively appropriate sentencing ranges and require a sentence "within the applicable range unless there exist identifiable, substantial and compelling circumstances" to depart. *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (quotation omitted). We will reverse a district court's imposition of a presumptive sentence only in a "rare case." *State v. Kindem*, 313 N.W.2d 6, 7 (1981). This is not such a case. The district court imposed a sentence slightly below the presumptive sentence, which was less than that recommended by probation, and

sentenced Neft consistently with the plea agreement, which also involved dismissal of another charge and an agreement that federal prosecution would not occur.  The district court did not abuse its discretion in ordering a 150-month guidelines sentence.

**Affirmed.**